AO 106 (Rev. 04/10) Application for a Search Warrant


OK MCL
6/27/19

# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
JUL 2 5 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Ultra Cell Phone, Model No. J8<br>IMEI: 352357086021944<br>IMEI: 352357086021951 | )<br>)<br>)  Case No.   '19MJ 3100<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, U.S.C. §§ 952, 960, 963 | Conspiring and Importing Controlled Substances |

The application is based on these facts:

Refer to attached affidavit of Special Agent Allie M.C. Peters

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Allie M.C. Peters, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/25/2019 @ 9:10 a.m.

*Judge's signature*

City and state: San Diego, CA

PETER C. LEWIS
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Allie M.C. Peters, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic devices, as further described in Attachment A (collectively the "**Target Device**"), and seize evidence of violations of federal law, namely 21 U.S.C. §§ 952, 960, and 963, as further described in Attachment B:

> Ultra Cellular Phone
> Model No. J8
> IMEI 352357086021944
> IMEI 352357086021951
> ("**Target Device**")

This search supports an investigation and prosecution of Galdino GARCIA-Nava (GARCIA-Nava), who is presently charged with committing violations of 21 U.S.C. §§ 952 and 960. A factual explanation supporting probable cause follows.

2. Officers with the Department of Homeland Security, United States Customs and Border Protection ("CBP"), seized the **Target Device** from GARCIA-Nava on May 07, 2019, when he was arrested at the San Ysidro, California, Port of Entry ("POE") for drug smuggling, in violation of 21 U.S.C. §§ 952 and 960. The **Target Device** is currently in the possession of the Department of Homeland Security and is presently stored at 2255 Niels Bohr Ct. San Diego, California, 92154.

3. Based on the information below, there is probable cause to believe that searches of the **Target Device** will produce evidence of the aforementioned crimes, as more particularly described in Attachment B.

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to investigators about this investigation. It contains only those facts believed to be necessary to establish probable cause. In addition, information contained in

this affidavit is based upon reviews of official reports and records, conversations with other investigators experienced in the area of drug investigations, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## TRAINING AND EXPERIENCE

5. I am currently a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have been employed by ICE/HSI as a Special Agent since August 2018. Prior to becoming a Special Agent, I served as a United States Customs and Border Protection Officer with the United States Customs and Border Protection ("CBP"), from 2015-2018.

6. As a Special Agent for HSI, I am responsible for investigating laws enumerated in Title 8, Title 18, and Title 21 of the United States Code. Included in my responsibilities is the investigation of illicit contraband-smuggling, including narcotics-smuggling, across the United States border.

7. I have completed and graduated from the twelve-week Criminal Investigator Training Program as well as the fifteen-week Homeland Security Investigations Special Agent Training Program located in Glynco, Georgia at the Federal Law Enforcement Training Center. I have also completed and graduated the four-month Officer Basic Training Academy with CBP, located in Glynco, Georgia at the Federal Law Enforcement Training Center.

8. Since April of 2019, I have been assigned to a Narcotics Response group in San Ysidro, CA. My duties include investigating the illicit trafficking of controlled substances into the United States. During my assignment to the Narcotics Response Group, I have participated in the investigation of various drug-trafficking organizations involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California.

2

*Affidavit in Support of Search Warrant*

9. Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, emails, instant messages, social networking messages, maps and directions, and phone numbers of co-conspirators.

10. In the course of my duties, I have been a case agent directing drug-related investigations. I have participated in many aspects of criminal investigations including reviewing evidence and conducting physical and electronic surveillance. I have interviewed defendants while conducting various investigations. I have gained a working knowledge and insight into the normal operational habits of narcotics traffickers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego international ports of entry.

11. Based upon my training and experience as an HSI Special Agent, and my consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I further submit the following:

    a. Drug smugglers use cellular telephones because the devices are mobile and provide instant access to telephone calls, texts, internet, application-based communications platforms (*e.g.*, WhatsApp), and voice messages;

    b. Drug smugglers use cellular telephones because they are able to actively monitor the progress of the illegal cargo while the conveyance is in transit;

    c. Drug smugglers and their accomplices use cellular telephones because the phones help them arrange for the delivery of cargo at predetermined locations and monitor / plan for arrival times;

3

*Affidavit in Support of Search Warrant*

      d.    Drug smugglers use cellular telephones to direct couriers to synchronize drop off and pick up times of the illegal cargo;

      e.    Drug smugglers use cellular telephones to notify or warn accomplices about law-enforcement activity, such as the presence and posture of marked and perceived unmarked patrol vehicles, or the operational status of border checkpoints and border crossings; and

      f.    The use of cellular telephones by smugglers tends to generate evidence stored on the cellular telephones, including but not limited to emails, text messages, application-based communications, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

12.    Subscriber Identity Module ("SIM") Cards, also known as subscriber identity modules, are smart cards that store data for cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

## FACTS IN SUPPORT OF PROBABLE CAUSE

13.    According to a report prepared by CBP Officer Desmond, at approximately 9:51 a.m. on May 7, 2019, Officer Desmond was conducting an inspection in vehicle primary lane 21 at the San Ysidro POE. GARCIA-Nava, the sole occupant of a white Dodge Ram, bearing California License Plate (5C57366), stated to Officer Desmond that he was going to the California Department of Motor Vehicles, in San Diego, CA. Officer Desmond asked GARCIA-Nava twice if he had anything to declare, both times GARCIA-Nava stated "no". Officer Desmond then conducted an inspection of the vehicle, noticing that the gas tank had tampering, and sounded differently when tapped. Officer Desmond then noticed that GARCIA-Nava was gripping the steering wheel tightly, avoided eye contact, and was asking questions relating to the inspection. Officer Desmond then referred the vehicle and its sole occupant to the vehicle secondary lot for further disposition.

4

*Affidavit in Support of Search Warrant*

14. Per Officer Desmond's report, while in secondary inspection, Officer Desmond utilized a micro fiber scope to see into the gas tank and noticed what appeared to be packages. Officer Desmond had GARCIA-Nava get out of the car; he handcuffed GARCIA-Nava, and escorted him to the security office.

15. According to Canine Enforcement Officer Perez' report, at approximately 10:00 a.m., Officer Perez responded to screen the Dodge Ram with a K-9 Unit. At that time, the K-9 Unit alerted to the rear driver side wheel well, by the gas tank hose. Officer Perez advised an Officer in the vehicle secondary lot of the alert.

16. The Dodge Ram was scanned through the "Z-Portal" X-Ray Machine. Per the report of CBP Officer Tipa, the scans showed an anomaly in the gas tank.

17. Per CBP Officer Sisti's report, Officer Sisti then removed 69 packages from the gas tank of the Dodge Ram. At approximately 11:00 a.m., the contents of one of the packages was tested using the Gemini, and tested positive for methamphetamine. A second package was tested using the Gemini at 11:05am, testing positive for black tar heroin. A third package was then tested using Fentanyl strips. In total, Officer Sisti recovered sixty-five (65) packages of methamphetamine, three (3) packages of black tar heroin, and one (1) package of fentanyl; for a total of sixty-nine (69) packages. The sixty-five (65) total packages of Methamphetamine had a gross weight of 32.50 kilograms. The three (3) total packages of black tar heroin had a gross weight of 2.06 kilograms. The one (1) package of fentanyl had a gross weight of .40 kilograms.

18. Per Officer Sisti's report, after testing and weighing the substances, at approximately 12:30 p.m., Officer Sisti placed GARCIA-Nava under arrest for the importation of controlled substances. Officer Sisti also seized the Dodge Ram, methamphetamine, heroin, fentanyl, the **Target Device**, and personal property from GARCIA-Nava.

19. Following his arrest, GARCIA-Nava received his *Miranda* rights from HSI Special Agent Allie Peters. Per Special Agent Peters' report, GARCIA-Nava invoked.

20. Based upon my experience investigating drug smuggling, my training, and my

*Affidavit in Support of Search Warrant*

consultation with other investigators who have experience investigating drug smuggling near the border, I understand that drug smugglers will seek to smuggle drugs from Mexico to the United States by hiding the drugs in compartments of cars, and in non-factory compartments (*i.e.*, compartments that the manufacturer did not design for ordinary use). Smugglers will then drive north from Mexico and seek to pass through POEs with the drugs undetected. (I am also aware that such individuals will sometimes try to generate a history of crossings to show that driving through a POE is ordinary behavior for them.) When they arrive in the United States, smugglers will take the drugs to a discreet location to transfer them to other people involved in the distribution chain, who can then send the drugs to other locations for downstream distribution.

21. Given the facts surrounding the arrest of GARCIA-Nava and based upon my experience and training, as well as consultation with other law enforcement officers experienced in drug smuggling investigations, I submit that there is probable cause to believe that information relevant to the smuggling activities of GARCIA-Nava will be found in the **Target Device**. Such evidence, which could be in the form of communications, records, data (including but not limited to emails, text messages, other social messaging applications), photographs, audio files, videos, or location data:

    a. tending to indicate efforts to import methamphetamine, heroin, fentanyl, or other federally controlled substances from Mexico into the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, heroin, fentanyl, or other federally controlled substances from Mexico into the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine, heroin, fentanyl, or other federally controlled substances from Mexico into the United States;

*Affidavit in Support of Search Warrant*

        d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, heroin, fentanyl, or other federally controlled substances from Mexico into the United States;

        e.    tending to identify the movement of proceeds associated with the trafficking of methamphetamine, heroin, fentanyl, or other federally controlled substances that are imported from Mexico into the United States;

        f.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

        g.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

22.    Finally, I note that drug conspiracies generally entail detailed and intricate planning as part of efforts to evade detection by law enforcement. In my professional training and experience, I am aware that this requires planning and coordination in the days and weeks (and often months) prior to the relevant drug-related event. Additionally, I am aware that co-conspirators are often unaware of a subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine the whereabouts of their valuable cargo, particularly in the hours following the arrest. Therefore, I believe that the appropriate date range for the search of the **Target Device** is from March 7, 2019 up to and including May 8, 2019 (*i.e.*, the day after the events described in this affidavit).

## **METHODOLOGY**

23.    It is not possible to determine, merely by knowing a cellular telephone's make, model, and serial number, the nature and types of services to which the devices are subscribed and the nature of the data stored on the devices. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their

7

subscribers to access their devices—both phones and tablets—over the internet and remotely destroy all of the data contained on the devices. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones and tablets do not have hard drives or hard-drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models, and some tablets, using forensic hardware and software. Even if some of the stored information on the devices may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

24. Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the **Target Device** and any associated memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

25. Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

26. Law enforcement has not yet attempted to obtain the evidence sought by this warrant.

**CONCLUSION**

27. Based on all the facts and circumstances described above, I believe probable cause exists to conclude that GARCIA-Nava used the **Target Device** to facilitate the offense

8

*Affidavit in Support of Search Warrant*

of drug smuggling and to communicate with co-conspirators. The **Target Device** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

28. Because the **Target Device** was promptly seized following the arrests of GARCIA-Nava at the San Ysidro POE, there is probable cause to believe that evidence of the smuggling offense committed by them continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from March 7, 2019, up to and including May 8, 2019.

29. WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the **Target Device**, as described in Attachment A, and seize the items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
ALLIE M.C. PETERS
Homeland Security Investigations Special Agent
Department of Homeland Security

Subscribed and sworn to before me on this __25__ day of July, 2019.

_____
THE HON. PETER C. LEWIS
United States Magistrate Judge

*Affidavit in Support of Search Warrant*